FILED
2008 Mar-19 AM 10:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **BARBARA A. HEIDRICK** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CV-06-BE-1678-E** |
| | ) | |
| **MICHAEL J. ASTRUE** | ) | |
| **COMMISSIONER OF** | ) | |
| **SOCIAL SECURITY** | ) | |
| | ) | |
| **Defendant** | ) | |

## MEMORANDUM OPINION

### I. Introduction

The claimant, Barbara A. Heidrick, brings this pro se action seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits. Claimant filed her application on December 7, 2000. The claimant's administrative hearing was held on December 11, 2002. Thereafter, claimant timely pursued and exhausted the administrative remedies available before the Commissioner. Claimant filed a complaint against the Social Security Administration and Commissioner Michael J. Astrue on August 20, 2006. The claimant disagrees with the ALJ's finding that her Residual Functional Capacity enables her to perform past relevant work. Accordingly, this case is now ripe for judicial review pursuant to the provisions of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). For the reasons stated below, the decision of the Commissioner will be affirmed.

## II. Standard of Review

This court does not review the Commissioner's factual determinations *de novo.* The standard of review is "substantial evidence," which is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "No...presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). "The court must scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but the court must also view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bown*, 804 F.2d 1179 (11th Cir. 1986). On appeal of an ALJ's decision, the district court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

Regardless of whether a claimant is represented, the ALJ has a duty to develop a full and fair record. *See Brown v. Shalala,* 44 F.3d 931, 934-35 (11th Cir. 1995). Full and fair development of the record enables the reviewing court "to determine whether the ultimate decision on the merits is rational and supported by substantial evidence." *See Welch v. Bowen*, 854 F.2d 436, 440 (11th Cir. 1988). A "full and fair record" may not require the use of expert testimony; but, at the very least, the ALJ must make specific findings on whether suitable "work exists in substantial numbers in the national economy." *See Welch v. Bowen*, 854 F.2d 436, 440 (11th Cir. 1988). To further develop the record, vocational expert testimony is needed when the

medical evidence is inconclusive as to the claimant's residual functional capacity. *Lamb v. Bowen*, 847 F.2d 698, 704 (11th Cir. 1988).

If a pro se claimant has not waived her right to representation, the ALJ has a heightened duty to develop a full and fair record to prevent prejudice against the claimant. The ALJ must "'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" *See Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995). A claimant may waive her right to counsel, provided that the waiver is made knowingly and intelligently. For a waiver to be effective, the claimant must be properly apprised of her options concerning representation. *See Smith v. Schweiker*, 677 F.2d 826, 828 (11th Cir. 1982).

Under 42 U.S.C. § 423(d)(1)A), a person is entitled to disability benefits when the person cannot engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the claimant presently unemployed?
> (2) Is the claimant's impairment severe?
> (3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt 404, Subpt. P, App.1?
> (4) Is the claimant unable to perform his or her former occupation?
> (5) Is the claimant unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). *See also* 20 C.F.R. §§ 404.1520, 416.920.

At steps four and five, the ALJ must determine the claimant's "residual functional capacity" (RFC), which is an assessment based upon all of the relevant evidence of a claimant's ability to do work. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also* 20 C.F.R. § 404.1545(b). The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, pull, etc. *See* 20 C.F.R. § 404.1545(b).

When a claimant attempts to establish a disability through her own testimony about pain or other subjective symptoms, the "pain standard" applies. The pain standard requires: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (b) evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see also Kelly v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999). This standard also applies to complaints of subjective conditions other than pain. *See Holt*, 921 F.2d at 1223. If nonexertional impairments exist, the ALJ must introduce independent evidence, preferably through vocational expert's testimony, of existence of jobs in the national economy that claimant can perform. *See Wolfe v. Chater*, 86 F.3d 1072, 1077-78 (11th Cir. 1996).

If the ALJ finds that the claimant is capable of performing past relevant work, the claimant bears the burden of demonstrating that she cannot return to her past relevant work. *See Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990). The claimant must demonstrate an inability to perform her "past kind of work not an inability to perform a specific job he held in the past." *See* 20 C.F.R. § 404.1520(e), [20 C.F.R. § 416.920(e)]; *see also Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986) (finding that although claimant had demonstrated that he could not perform

his past job as a link belt operator at the pipe manufacturing factory, he did not demonstrate that he could not perform such jobs in general because he did not show that climbing and descending stairs is generally a requisite of such jobs).

**III. Facts**

Claimant was 55 years old at the time of the administrative hearing and has completed three years of college education. (R. 170, 165). Her past work experiences include accounting technician, grocery store cashier, and hotel desk clerk. (R. 170, 174-75). Claimant was injured in both 1994 and 1998. (R. 15). In 1994, the claimant was injured during an operation on her neck and she became partially paralyzed in her right arm, hand, and two fingers. (R. 174, 179). In 1998, the claimant fell and broke her nose, which increased her suffering from spasmodic asthma. (R. 15, 174, 181). Claimant continued to work as an accounting technician until 1999. (R. 170). Between 1994 and 1998, the claimant periodically held a second job, either as a hotel desk clerk or as a grocery store cashier. (R. 174-75). Claimant asserts that she became unable to work in September 1999, for several reasons: asthmatic condition, neck pain, back pain, degenerative arthritis in her shoulder, and partial paralyzation. (R. 15, 182).

Before interviewing the claimant about her impairments, the ALJ advised the claimant about her options for legal representation and verified that the claimant was comfortable proceeding without an attorney. (R. 166-67). The ALJ made the claimant aware of free legal services and contingency-based opportunities for representation. (R. 166-67). The claimant acknowledged that she was aware of these options and that she was choosing to proceed pro se. (R. 165).

To establish that he had fully developed the record, the ALJ asked claimant if she had read

the file and if she had any questions about its contents. (R. 167-68). The claimant confirmed that she had read the file and noted the absence of Dr. Callahan's records of her treatment. (R. 168-69). The ALJ explained that Dr. Callahan purged the documents from his files after five years. (R. 169). The record showed that the ALJ had repeatedly contacted Dr. Callahan about the missing records. (R. 150-154). The claimant stated no other concerns about the record.

Employing the five-step analysis, the ALJ first found that the claimant had not engaged in substantial gainful activity since the onset of the alleged disability in September 1999. (R. 15). At step two of his analysis, the ALJ determined that the claimant "has status post surgery of the cervical spine with chronic pain in the neck and lumbar spine and asthma under good control, impairments which cause significant vocationally relevant limitations." (R. 15-16). Because the ALJ considered these impairments to be severe, he consulted the list of impairments in Appendix 1, SubPart P. (R. 16). The ALJ found that the claimant had "no impairment which meets the criteria of any of the listed impairments." (R. 16). The ALJ further found that "no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment." (R. 16).

The ALJ then assessed the exertional factors of the claimant's residual functional capacity. The ALJ's assessment included questions about the claimant's abilities to walk, stand, sit, and carry/lift objects. The claimant said that she cannot work an eight-hour day in a forty-hour week and that she did not think that she could stand and walk for six hours. (R. 177-78). The claimant had difficulties at her job as a cashier because she could not stand for the period of time required (a period of less than 8 hours). (R. 176). The claimant stated that she frequently drops things, especially smaller objects, and that she no longer has full range of motion through her right side,

arm, and hand. (R. 174). However, the claimant said that she could sit and push/pull things for six hours. ( R. 178). When the ALJ asked if the claimant was able to lift between 25 and 50 pounds, as indicated in the Social Security Disability Determination analysis, she said that she did not know, but that she had been able to lift that much while she worked at Fort McClellan in 1999. (R. 177).

The ALJ then asked the claimant about nonexertional limitations on her ability to work. At the time of the administrative hearing, the claimant was taking Darvocet N and anti-inflammatory Ibuprofen for her pain. (R. 184). In addition to her neck and back pain, arm and hand paralysis, and asthma, the claimant said that she has degenerative arthritis in her back. (R. 182, 184). The claimant rated her pain at five, with the stipulation that it could rate as high as an eight. (R. 183).

The ALJ reviewed the medical records and found that the claimant's subjective complaints did not meet the pain standard. (R. 16). He found that claimant did not provide objective medical evidence that confirmed the severity of the alleged pain arising from her condition. (R. 15-16, 17). He further found that the objectively determined medical condition was not of such severity that it could reasonably be expected to give rise to the alleged pain. (R. 15-16, 17). Despite her complaints of pain, the claimant did not regularly see a doctor. (R. 16). After her initial surgery in 1994, the claimant did not undergo further hospitalization or surgery and her treating physicians provided "no evidence of serious abnormalities, only mild degenerative arthritis in the right shoulder." (R. 16). Medical progress notes dating September 1996, December 1998, March 1999, and January 2000 indicated that the claimant continued to do well and that her asthma was under control. (R. 15). The ALJ found no evidence that a "doctor, treating or consulting has ever

indicated that the claimant is not capable of gainful activity." (R. 16). The consulting examiner diagnoses showed the claimant to be in good health: clear lungs, normal heart, full range of motion, normal motor functions, normal gait, and sensory and reflex responses within normal limits. (R. 15). The consulting examiner found the claimant to have "chronic and acute pain in neck and lumbar spine. . .and bronchial asthma." (R. 15).

The ALJ asked more specifically about the claimant's asthma, which she said has "abated" somewhat since the claimant's fall in 1998. (R. 174). The claimant described her asthma as spasmodic and explained that dust particles in the air or stress cause her attacks. (R. 181). Since the claimant reduced her physical exertion, she had not had an attack for several years. (R. 182). The claimant's pulmonary function test showed only mild blocking of the airways. (R. 15).

Based on the claimant's description of her own abilities and the medical evidence, the ALJ determined that the claimant's residual functional capacity would allow her to perform sedentary work in an atmospherically controlled environment and that she should lift no more than 10 pounds. (R. 16). The ALJ based his determination of the claimant's RFC on the information from her treating and consulting physicians. (R. 16).

A vocational expert testified that claimant's past relevant work of accounting technician was a semi-skilled, sedentary position and that her experience in that position would translate to other jobs, specifically that of general or less-skilled clerical positions or filing, correspondence, computer applications, or telecommunications positions. (R. 186-87). The vocational expert also testified that significant numbers of general clerical positions exist in the national economy, with 5,000 to 6,000 of those positions being in the economy of North Central Alabama. (R. 188). The vocational expert classified these jobs and claimant's former position as an accounting technician

as sedentary work in a controlled atmosphere, clear of dust and fumes that might cause an asthma attack. (R. 186-89).

The medical evidence and testimony of the vocational expert showed that the claimant retained the residual functional capacity to perform not only her past relevant work, but also other jobs available in significant numbers in the national economy. Thus, the ALJ found that the claimant was not "disabled" as defined in the Social Security Act and was not entitled to benefits. (R. 17).

In response to the ALJ's findings, the claimant did not provide new medical evidence that would support her subjective complaints. (R. 9-10). The claimant supplemented the record with a personal letter (from herself to the Social Security Administration) that further described her pain. (R. 10).

On August 24, 2006, the claimant appealed the ALJ's decision and submitted a motion for leave to proceed in forma pauperis. On December 20, 2006, the Commissioner filed an answer to the appeal and a briefing letter. On March 5, 2007, the Commissioner filed a memorandum in support of the Commissioner's decision.

**IV. Discussion**

In this appeal, claimant contends that the ALJ erred by finding that she could perform past relevant work. The ALJ found that the claimant could return to her past work because she had a residual functional capacity for "sedentary and semi-skilled" work "with the need for a controlled environment as to temperature and atmosphere" and that she suffered from "no more that moderate pain." (R. 18). This court finds the ALJ's determination that the claimant's residual functional capacity would allow her to perform past relevant work is supported by substantial

evidence and thus due to be affirmed.

The claimant's past relevant work as an accounting technician did not require the performance of work-related activities precluded by her residual functional capacity. (R. 18). To assess the claimant's RFC, the ALJ considered both exertional and nonexertional factors. To determine exertional limitations, the ALJ asked the claimant about her ability to do physical activities. (R. 178). The claimant testified that she was able to sit for six hours, during which time she could push and pull objects. (R. 178).

To determine the nonexertional limitations, the ALJ appropriately applied the pain standard to the claimant's complaints of pain and asthma. (R. 16). The ALJ found that the claimant met part one of the standard because she had an "underlying medical condition" of chronic pain in the neck and lumbar spine. (R. 15-16). The claimant failed to meet part two of the standard. The ALJ could not find evidence from her medical records to suggest that the claimant's impairments would keep her from gainful activity. On the contrary, the medical evidence from both the treating physicians and the consulting examiner attested to the claimant's health and physical well-being. (R. 15). Despite her complaints of pain, the claimant did not regularly see a doctor. (R. 16). After her initial surgery in 1994, the claimant did not undergo further hospitalization or surgery and the ALJ found that claimant's treating physicians provided "no evidence of serious abnormalities, only mild degenerative arthritis in the right shoulder." (R. 16). Medical progress notes showed that the claimant continued to do well and that her asthma was under control. (R. 15). The ALJ found no evidence that a "doctor, treating or consulting has ever indicated that the claimant is not capable of gainful activity." (R. 16). Accordingly, the ALJ found that no objective medical evidence existed to support Claimant's allegations regarding the

severity of her pain or other symptoms and that the claimant's impairments could not reasonably be expected to give rise to her symptoms. (R. 16).

Based on the medical evidence, the claimant's testimony, and the application of the pain standard, the ALJ found that the claimant's residual functional capacity would allow her to work in a sedentary job, that was located in a controlled atmosphere and that required her to lift no more than 10 pounds. (R. 16). At the hearing, the ALJ interviewed a vocational expert about the claimant's RFC and corresponding job opportunities. The vocational expert's analysis supported the ALJ's findings regarding the claimant's RFC and identified other specific jobs, available in significant numbers in the national economy and in the economy of Northern Alabama. (R. 186-90). The vocational expert categorized the claimant's past relevant work as a sedentary job located in a controlled environment. (R. 186, 188). Thus, the ALJ concluded that the claimant was able to return to her past relevant work. (R. 16-17).

In response to the ALJ's findings, the claimant did not provide new *medical* evidence that would support her subjective complaints. (R. 9-10). The claimant supplemented the record with a letter that further described her pain. (R. 10).

The court has carefully reviewed the entire record in this case and finds that substantial evidence supports the ALJ's decision and that the ALJ applied proper legal standards in reaching his decision. Accordingly, the court will affirm the Commissioner's decision.

The court will enter a separate Order in conformity with this memorandum opinion.

DATED this 19th day of March 2008.

Karon O. Bowdre
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE